**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| BX LED LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 6:22-cv-00445 |
| | ) |
| WALMART INC., | ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT FOR PATENT INFRINGEMENT

1.      Plaintiff BX LED LLC ("BX" or "Plaintiff"), by and through the undersigned counsel, hereby asserts the following claims for patent infringement against Defendant Walmart Inc. ("Walmart" or "Defendant"), and alleges as follows:

## SUMMARY

2.      Plaintiff is the owner by assignment of all right, title and interest in United States Patent Nos. 6,869,812, 7,901,109, 7,973,465, 8,203,260, 8,567,988, 8,998,433, and 10,966,300 (collectively, the "Patents-in-Suit").

3.      Defendant infringes the Patents-in-Suit at least by selling, without authorization, Plaintiff's proprietary technologies in a number of its commercial products including, inter alia, Great Value Deco LED Dimmable Soft White G25 Light Bulb 60W Equivalent, Great Value LED Frosted Light Bulb A19 40 60 100 Watts Day Light 3 Way Bulb, Great Value LED 3.5 Watts Soft White MR16 GU10 Base Bulb, Great Value LED Light Bulb 10 Watts 90W Equivalent PAR38 Floodlight Lamp, Great Value LED Light Bulb 5.5W 60W Equivalent B10 Deco Lamp, Great Value LED Light Bulb 6W 60W Equivalent A15 Lamp, Great Value LED Light Bulb 9.5W 60W

Equivalent A19 Motion Sensor Lamp, Great Value Vintage Light Bulb 60W Equivalent Amber

Light G25 E26, Great Value Vintage Light Bulb Amber Light E26 40W Equivalent, Great Value

Wiz LED Smart Bulb A19 60 Watt 2700K 6500K Wifi Dimmable, Great Value 9 Watts (65W

Equivalent) BR30 Floodlight Lamp, Great Value 7W (50W Equivalent) PAR16 Lamp, Great

Value LED MR16 Flood Light, Hyper Tough 1000 Lumen LED Motion Activated Solar Path

Light, and Hyper Tough 2000 Lumen LED Solar Motion Sensor Security Flood Light, among

other substantially similar products (collectively, the "Accused Products"). These Accused

Products are marketed, offered, and distributed throughout the United States, including in this

District.

4.      By this action, Plaintiff seeks to obtain compensation for the harm Plaintiff has

suffered, and will continue to suffer, as a result of Defendant's infringement of the Patents-in-Suit.

## NATURE OF THE ACTION

5.      This is a civil action for patent infringement arising under the patent laws of the

United States, 35 U.S.C. § 1 *et seq.*

6.      Defendant has infringed and continues to infringe, and at least as early as the filing

and/or service of this Complaint, has induced and continues to induce infringement of, and has

contributed to and continues to contribute to infringement of, one or more claims of Plaintiff's

Patents-in-Suit at least by making, using, selling, and/or offering to sell the Accused Products in

the United States, including in this District, and/or by importing the Accused Products into the

United States.

7.      Plaintiff is the legal owner by assignment of the Patents-in-Suit, which were duly

and legally issued by the United States Patent and Trademark Office ("USPTO"). Plaintiff seeks

monetary damages for Defendant's infringement of the Patents-in-Suit.

### THE PARTIES

8.      Plaintiff BX LED LLC is a Texas limited liability company with its principal place of business at 8140 Walnut Hill Ln., Ste. 500, Dallas, TX 75231. Plaintiff is the owner of the intellectual property rights at issue in this action.

9.      On information and belief, Defendant Walmart Inc. is a Delaware corporation with a principal address of 702 S.W. 8th Street, Bentonville, AR 72716-6299, and may be served with process by serving its registered agent CT Corporation System, located at 1999 Bryan St., Ste. 900 Dallas, TX 75201 or wherever they may be found.

10.     On information and belief, Defendant operates numerous regular and established places of business throughout the Western District of Texas, including, but not limited to Walmart Supercenter #939 at 4320 Franklin Avenue, Waco, TX 76710 and Walmart Supercenter #5389 at 600 Hewitt Dr., Waco, TX 76712.

11.     On information and belief, Defendant produces or causes to be produced both the Great Value and Hyper Tough brand products under its private label business (*see, e.g.* https://www.energystar.gov/productfinder/product/certified-light-bulbs/details/2370191     and https://www.energystar.gov/productfinder/product/certified-light-fixtures/details/2390226)  Both the Great Value and Hyper Tough brands are trademarked and held by Walmart Apollo, LLC (https://uspto.report/TM/77246344  and  https://uspto.report/TM/86978595). Through,  at least, Defendant's sale of the Infringing Products, Defendant has committed, and continues to commit, ongoing acts of infringement throughout this District.

12.     On information and belief, Defendant, through its numerous retail stores, directly and/or indirectly distributes, markets, offers to sell, and/or sells the Accused Products in the United States and/or imports the Accused Products into the United States, including in the Western

District of Texas, and otherwise directs infringing activities to this District in connection with the Accused Products.

## JURISDICTION AND VENUE

13.     As this is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, this Court has subject matter jurisdiction over the matters asserted herein under 28 U.S.C. §§ 1331 and 1338(a).

14.     This Court has personal jurisdiction over Defendant because Defendant has (i) availed itself of the rights and benefits of the laws of the State of Texas, (ii) transacted, conducted, and/or solicited business and engaged in a persistent course of conduct in the State of Texas (and in this District), (iii) derived substantial revenue from the sales and/or use of products, such as the Accused Products, in the State of Texas (and in this District), (iv) purposefully directed activities (directly and/or through intermediaries), such as marketing, shipping, distributing, offering for sale, selling, and/or advertising the Accused Products, at residents of the State of Texas (and residents in this District), (v) delivered Accused Products into the stream of commerce with the expectation that the Accused Products will be used and/or purchased by consumers in the State of Texas (and in this District), and (vi) committed acts of patent infringement in the State of Texas (and in this District).

15.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b), as Defendant operates numerous retail stores in this State and District that sell the Accused Products.

## BACKGROUND AND THE PATENTS-IN-SUIT

16.     Bridgelux, Inc., ("Bridgelux") is a Fremont, California-based manufacturing company that has, since 2002, designed solid-state lighting solutions that are high performance,

energy efficient, cost effective, and easy to integrate. Bridgelux's patented light source technology produces clean, white light-emitting diodes ("LEDs") used as the core of commercial and industrial lighting. Plaintiff is the owner by assignment of the Patents-in-Suit acquired from Bridgelux.

## U.S. Patent No. 6,869,812

17.     U.S. Patent No. 6,869,812 (the "'812 Patent") is titled "High power AllnGaN based multichip light emitting diode" and was issued on March 22, 2005. A true and correct copy of the '812 Patent is attached as Exhibit A.

18.     The '812 Patent was filed on May 13, 2003 as U.S. Patent Application No. 10/438,108.

19.     Plaintiff is the owner of all rights, title, and interest in and to the '812 Patent, with the full and exclusive right to bring suit to enforce the '812 Patent, including the right to recover for past infringement.

20.     The '812 Patent is valid and enforceable under United States Patent Laws.

21.     The '812 Patent recognized problems with existing light emitting diodes at the time of the invention of the '812 Patent.

22.     For instance, the inventors of the '812 Patent recognized that prior art light emitting diodes had issues of insufficient illumination and poor efficiency, limiting their ability "to function in some applications, such as providing general illumination, *e.g.*, ambient lighting." '812 Patent at 1:24-31. Prior attempts to address these issues involved the use of multiple LEDs and/or larger device sizes. *See id.* at 1:38-45, 2:16-18.

23.     The use of larger device sizes introduced other impediments towards efficiency, *e.g.*, lower light extraction efficiency relative to smaller devices. *See id.* at 2:61-65. Light

extraction efficiency refers to the issue that when light is generated in an LED, some light fails to escape the device, because "as the device size increases, light has a tendency to bounce more and thus travel a longer distance before exiting the device, resulting in increased light loss," whereas "light tends to bounce fewer times in a smaller device and thus travels a shorter distance." *See id.* at 3:12-16.

24.     The inventors of the '812 Patent recognized that it was "desirable to minimize the number of bounces and the total travel distance before light can escape for any light transmissive layer of an LED." *See id.* at 3:9-11.

25.     In view of the foregoing, among other advantages over the prior art, the inventions claimed by the '812 Patent provide the benefits of "superior light output efficiency" over the prior art by way of an active area with elongated geometry. *See id.* at 11:46-48. With elongated geometry, "light can easily escape from the long dimension side, thus substantially enhancing the brightness of the device. The elongated configuration of the LED chip also enhances heat dissipation, thus allowing the device to be operated at higher current levels to facility further enhancement of the light output thereof, as well as for improvement of the efficiency thereof." *See id.* at 8:62-9:3.

## U.S. Patent No. 7,901,109

26.     U.S. Patent No. 7,901,109 (the "'109 Patent") is titled "Heat sink apparatus for solid state lights" and was issued on March 8, 2011. A true and correct copy of the '109 Patent is attached as Exhibit B.

27.     The '109 Patent was filed on June 30, 2008 as U.S. Patent Application No. 12/165,563.

28.     Plaintiff is the owner of all rights, title, and interest in and to the '109 Patent, with

the full and exclusive right to bring suit to enforce the '109 Patent, including the right to recover for past infringement.

29.     The '109 Patent is valid and enforceable under United States Patent Laws.

30.     The '109 Patent recognized problems with existing solid state lights at the time of invention.

31.     For instance, the '109 Patent recognized that the "operational power of many current solid state lights, such as light-emitting diode (LED) lights, is often limited by the solid state lights' ability to dissipate heat." '109 Patent at 1:11-13. "Accordingly, increasing the ability of a solid state light to dissipate heat allows for higher power, and thus brighter, more efficient solid state lights." *Id.* at 1:18-20.

32.     In view of the foregoing, the '109 Patent discloses, in one embodiment, "a heat sink apparatus for a solid state light" that "comprises a heat sink comprising a first end configured for connection to a solid state light, a second end opposite the first end, and a heat dissipating portion between the first end and the second end. The heat dissipating portion has an elongated portion and a plurality of fins for dissipating heat generated by the solid state light, the fins extending from the elongated portion." *Id.* at 1:27-34. Through this, and other disclosed embodiments, the '109 Patent offers advantages of, inter alia, increasing the heat dissipation, power, brightness, and efficiency of solid state lighting over the prior art.

### U.S. Patent No. 7,973,465

33.     U.S. Patent No. 7,973,465 (the "'465 Patent") is titled "Light emitting diode with thin multilayer phosphor film" and was issued on July 5, 2011. A true and correct copy of the '465 Patent is attached as Exhibit C.

34.     The '465 Patent was filed on July 15, 2010 as U.S. Patent Application No.

12/836,852.

35.     Plaintiff is the owner of all rights, title, and interest in and to the '465 Patent, with the full and exclusive right to bring suit to enforce the '465 Patent, including the right to recover for past infringement.

36.     The '465 Patent is valid and enforceable under United States Patent Laws.

37.     The inventors of the '465 Patent recognized problems with the application of phosphor material to LEDs and other solid state lighting devices at the time. Specifically, phosphor materials were used to convert blue or ultraviolet LEDs to white light; to that end, the prior art encapsulated blue and ultraviolet LEDs with phosphor "by introducing a suspension of phosphor particles into a carrier (*e.g.*, silicone), encapsulating the LEDs in the carrier, and curing the carrier to provide a solid layer of material in which the phosphor particles will remain suspended." '465 Patent at 1:37-41.

38.     One problem present in the prior art was that "silicone is a poor thermal conductor, and when illuminated, phosphors generate heat. Thus, when a phosphor-coated LED with a cured silicone carrier is used in a high-power application, the cured silicone may crack and/or have a reduced lifetime. This property limits their use in high power LED applications which use temperature sensitive phosphor. Further, cracks in the phosphor and silicone composition reduce the efficiency of the device." *Id.* at 1:41-45.

39.     The inventions claimed by the '465 Patent addressed these limitations by, *e.g.*, separating the phosphor bearing film from the cured silicone film, such that the cured silicone film was substantially free of phosphor. As a result, the '465 Patent offered advantages of, inter alia, simplifying the process for applying phosphor material to LEDs, as well as increasing the reliability and efficiency of phosphor material encapsulated LEDs.

**U.S. Patent No. 8,203,260**

40.     U.S. Patent No. 8,203,260 (the "'260 Patent") is titled "Color temperature tunable white light source" and was issued on June 19, 2012. A true and correct copy of the '260 Patent is attached as Exhibit D. The '260 Patent was filed on April 13, 2007 as U.S. Patent Application No. 11/787,107.

41.     Plaintiff is the owner of all rights, title, and interest in and to the '260 Patent, with the full and exclusive right to bring suit to enforce the '260 Patent, including the right to recover for past infringement.

42.     The '260 Patent is valid and enforceable under United States Patent Laws. The '260 Patent recognized problems with existing light emitting devices at the time of the invention of the '260 Patent.

43.     For instance, the '260 Patent describes apparatuses, absent in the prior art, which provide a tunable white light source. *See*, *e.g.*, '260 Patent at 2:15-17. The '260 Patent recognized that traditional white light sources emitted white light at a relatively fixed color temperature, such as "warm white light" having a color temperature of approximately 3000 Kelvin (K), in the case of incandescent lighting, and "cold white light" having a color temperature of approximately 7000K, in the case of fluorescent lighting. *See id.* at 1:20-24. At the time of the '260 Patent, white LED lighting was a relatively recent innovation and had similar limitations to traditional white light sources. *Id.* at 1:13:29.

44.     The '260 Patent recognizes that the prior art comprised systems and methods wherein LED white light was generated within a predetermined portion of the visible spectrum, for example, 400nm-700nm wavelength range, and using a significant number (*e.g.*, "three hundred LEDs each of which has a narrow spectral width," in one example) of LEDs to achieve

any tunability within that spectrum. *See id.* at 1:55-65. Considering the narrow visibility spectrum of white light produced by these sources, the unwieldy number of LEDs required to provide tunability, and/or the need for cumbersome filters to obtain tunability, there was a need in the prior art for methods and devices that provided sources of white light that were tunable across the color temperature and visible spectrum with a minimal number of LED arrays. In addition, there was particular need to further increase the operating life and lower the power consumption of lighting devices, including LED lighting. *See*, *e.g.*, *id.* at 1:46-49; 2:61-64.

45.     The inventions claimed by '260 Patent address these limitations by describing an apparatus with two LED arrangements wherein the first LED arrangement emits light of a first wavelength range, and the second emits light of a second wavelength range such the combination of the two appears white. *See*, *e.g.*, *id.* at 2:21-28. The first and second LED arrangements also contained respective means for controlling their relative outputs. *See*, *e.g.*, *id.* For example, in one described embodiment, the color temperature of the two LEDs could be tuned by controlling the relative magnitude of the drive currents of the LEDs using, for example, a potential divider arrangement. *See id.* at 2:50-52.

46.     The inventors of the '260 Patent recognized a number of advantages of the claimed inventions over the prior art, including wide application in a variety of commercial and domestic lighting applications, without the necessity to manufacture different lights of various static, or highly limited, color temperatures and visibility spectrum output for different applications. *See*, *e.g.*, *id.* at 8:51-53. The invention is also particularly advantageous in applications where visibility may be impaired with changing environmental conditions such as fog, dust, or smoke, such that the LED lighting can be tuned to the level of optimal visibility. *See*, *e.g.*, *id.* at 3:49-53; 8:53-56. The invention further has the advantage of minimizing the number of LED arrangements necessary

to achieve tunability across a broad color temperature spectrum, thus improving efficiency in power consumption and reducing manufacturing cost. *See*, *e.g.*, *id.* at 2:61-65.

## U.S. Patent No. 8,567,988

47.   U.S. Patent No. 8,567,988 (the "'988 Patent") is titled "Efficient LED array" and was issued on October 29, 2013. A true and correct copy of the '988 Patent is attached as Exhibit E.

48.   The '988 Patent was filed on September 29, 2008 as U.S. Patent Application No. 12/240,011.

49.   Plaintiff is the owner of all rights, title, and interest in and to the '988 Patent, with the full and exclusive right to bring suit to enforce the '988 Patent, including the right to recover for past infringement.

50.   The '988 Patent is valid and enforceable under United States Patent Laws. The '988 Patent recognized problems with existing light emitting device arrays at the time of its invention.

51.   The inventors of the '988 Patent recognized that traditional prior art LED arrays were complicated to manufacture and resulted in inefficient heat dissipation, which in turn lowered light output by the LED array. In this regard, the '988 Patent recognized that "directly mounting the LED chips to a metal substrate without an insulting dielectric provided an efficient thermal path to reduce or minimize the degrading effects of heat on light output." *See*, *e.g.*, '988 Patent at 4:54-59. The '988 Patent also recognized that by spacing the LED chips apart from each other and making the surface of the metal substrate reflective, the regions between the chips operate to reflect light thereby increasing the optical output of the LED array. *See*, *e.g.*, *id.* at 6:10-17. Thus, the invention described and claimed in the '988 Patent provides the advantages of, inter alia, increased thermal efficiency and increased light output over the prior art.

**U.S. Patent No. 8,998,433**

52.    U.S. Patent No. 8,998,433 (the "'433 Patent") is titled "Light emitting device utilizing remote wavelength conversion with improved color characteristics" and was issued on April 7, 2015. A true and correct copy of the '433 Patent is attached as Exhibit F.

53.    The '433 Patent was filed on October 13, 2011 as U.S. Patent Application Serial No. 13/273,208 and has an earliest priority date of March 8, 2006.

54.    Plaintiff is the owner of all rights, title, and interest in and to the '433 Patent, with the full and exclusive right to bring suit to enforce the '433 Patent, including the right to recover for past infringement.

55.    The '433 Patent is valid and enforceable under United States Patent Laws.

56.    The '433 Patent recognized and provided solutions to problems with existing light emitting devices of the time of the inventions claimed in the '433 Patent. '433 Patent at 1:19-22.

57.    For instance, the inventors of the '433 Patent recognized that certain commercial and entertainment lighting applications may need light to be emitted with high color saturation for optimal presentation. *Id.* at 1:26-30. To that end, typically high color saturation would be generated by applying a narrow selective filter to an incandescent white light source (a source which comprises a combination of light with different wavelengths in the visible spectrum). *Id.* at 1:30-35. The narrow selective filter would filter the white light to provide the desired saturated color light emission, however, this was an inefficient system that "wastes a significant portion of the light generated by the light source, as a significant portion is absorbed by the selective filter rather than being transmitted." *Id.* at 1:35-41.

58.    At the time of the claimed inventions, LED (light emitting diode) light sources that produced white light were a relatively recent innovation whose practical use was brought about by

the development of LEDs emitting the blue/ultraviolet of the electromagnetic spectrum. *Id.* at 1:42-46. Such light generating LEDs would include photo-luminescent materials to absorb a portion of the blue light emitted by the LED and re-emit light in a range of wavelengths (red, green, or yellow) which could combine to produce light appearing to be white or other colors in the visible spectrum. *Id.* at 1:46-60. While this method improved efficiency, it typically resulted in the disadvantage of lower color saturation by producing "a much broader emission curve than desired." *Id.* at 1:61-2:5. Along with this disadvantage, this method could require the use of layers of photo-luminescent materials that were undesirably thick. *Id.* at 3:40-46.

59.     The inventors of the '433 Patent realized that if the color enhancement layer is placed in the path between the photo-luminescent layer and the final emission path, the color enhancement/filter layer serves to greatly improve the color saturation quality of the final emission product. *Id.* Advantageously, in this configuration, "undesirable wavelengths of the emission product of the layer of photo-luminescent material may be filtered such that a final emission product established by the wavelength conversion component is highly saturated." *Id.* at 14:50-59. In this respect, the '433 Patent discloses a light emitting device that improves color saturation by, in one embodiment, utilizing remote wavelength conversion including "a color enhancement layer" that "functions as a filter that narrows the light emission spectrum of the final emission product from the lighting apparatus." *Id.* at 3:47-57.

60.     In view of the foregoing, the invention described and claimed in the '433 Patent provides, inter alia, improved color characteristics over the prior art including improved efficiency and improved color saturation. *See*, *e.g.*, *id.* at 14:50-59.

## U.S. Patent No. 10,966,300

61.     U.S. Patent No. 10,966,300 (the "'300 Patent") is titled "Light sources utilizing

segmented LEDs to compensate for manufacturing variations in the light output of individual segmented LEDs" and was issued on March 30, 2021. A true and correct copy of the '300 Patent is attached as Exhibit G.

62.     The '300 Patent was filed on June 21, 2019 as U.S. Patent Application Serial No. 16/449,220 and has a priority date of February 26, 2009.

63.     Plaintiff is the owner of all rights, title, and interest in and to the '300 Patent, with the full and exclusive right to bring suit to enforce the '300 Patent, including the right to recover for past infringement.

64.     The '300 Patent is valid and enforceable under United States Patent Laws.

65.     The '300 Patent recognized and provided solutions to problems arising with LEDs' replacement of conventional light emitting devices such as incandescent and fluorescent lights. '300 Patent at 1:26-32.

66.     For instance, the '300 Patent recognized that the dissipation of heat due to the conversion efficiency of the LEDs places a limit on the power level at which an LED operates. The '300 Patent also recognized that, due to the increased current running through the LED, higher light output of the LEDs would lead to a decrease in conversion efficiency as well as an overall decrease in the lifetime of the LED. *Id.* at 1:41-61. A light source with a typical single LED does not produce sufficient light for most applications and, in general, "there is a limit to the light per unit area of LED that can be practically generated at an acceptable power conversion efficiency." *Id.* at 1:62-2:8. In this respect, LED light sources have been designed to use multiple LEDs wired in parallel to avoid numerous cost disadvantages and increased failure rates associated with connecting the LEDs in a series-type connection or by making larger LEDs. *Id.* at 2:9-3:31.

67.     The inventors of the '300 Patent addressed these limitations by utilizing "a single

LED die that is divided into N segments that are serially connected to one another." *Id.* at 4:29-42. In this respect, the '300 Patent comprises, in one embodiment, a plurality of segmented LEDs connected in parallel between two power rails where the segmented LEDs are serially connected in segments having equal area thus providing an improved, less expensive, and longer-lasting light emitting device. *Id.* at 4:29-45; 10:64-11:5; abstract.

68.     In view of the foregoing limitations of the prior art, the inventions claimed in the '300 Patent provide improved overall efficiency and life of the light source and "the ability to provide a light source that operates from a significantly higher potential than conventional LEDs while breaking up the light source into sufficient component light sources to compensate for the variability in light generation between the various component light sources." *See*, *e.g.*, *id.* at 7:37-43.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 6,869,812

69.     Plaintiff incorporates by reference and re-alleges the allegations set forth above as if set forth verbatim herein.

70.     Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '812 Patent in violation of 35 U.S.C. § 271 *et seq.*, directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the Great Value Deco LED Dimmable Soft White G25 Light Bulb 60W Equivalent, Great Value LED Light Bulb 10 Watts 90W Equivalent PAR38 Floodlight Lamp, Great Value LED Light Bulb 5.5W 60W Equivalent B10 Deco Lamp, Great Value LED Light Bulb 6W 60W Equivalent A15 Lamp, Great Value LED Light Bulb 9.5W 60W Equivalent A19 Motion Sensor Lamp, Great Value Vintage Light Bulb 60W Equivalent Amber Light G25 E26, Great Value Vintage Light Bulb Amber Light

E26 40W Equivalent, Great Value Wiz LED Smart Bulb A19 60 Watt 2700K 6500K Wifi Dimmable, Hyper Tough 1000 Lumen LED Motion Activated Solar Path Light, Hyper Tough 2000 Lumen LED Solar Motion Sensor Security Flood Light, and among other substantially similar products (collectively, the "'812 Accused Products").

71.     By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '812 Patent by the '812 Accused Products. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '812 Accused Products that it obtains during discovery.

72.     ***1(a): A light emitting diode chip comprising***:—the Great Value Deco LED Dimmable Soft White G25 Light Bulb 60W Equivalent, Great Value LED Light Bulb 5.5W 60W Equivalent B10 Deco Lamp, Great Value LED Light Bulb 9.5W 60W Equivalent A19 Motion Sensor Lamp, and Hyper Tough 2000 Lumen LED Solar Motion Sensor Security Flood Light each comprise a "light emitting diode chip," as recited in claim 1:



LED package



LED chip

*Great Value Deco LED Dimmable Soft White G25 Light Bulb 60W Equivalent*

16





Product view                                     LED chip

*Great Value LED Light Bulb 5.5W 60W Equivalent B10 Deco Lamp*







Product view                     LED package                  LED chip

*Great Value LED Light Bulb 9.5W 60W Equivalent A19 Motion Sensor Lamp*



| Product view | LED package(s) | LED chip |

*Hyper Tough 2000 Lumen LED Solar Motion Sensor Security Flood Light*

73.  ***1(b): a substantially transparent substrate***;— the light emitting diode chip in each of the Great Value Deco LED Dimmable Soft White G25 Light Bulb 60W Equivalent, Great Value LED Light Bulb 5.5W 60W Equivalent B10 Deco Lamp, Great Value LED Light Bulb 9.5W 60W Equivalent A19 Motion Sensor Lamp, and Hyper Tough 2000 Lumen LED Solar Motion Sensor Security Flood Light has a substantially transparent substrate. For example, the substrate allows for light to pass through it. A cross section image of each product's light emitting diode chip (removed from their respective packages) is presented below; a backlight is used to show the transparency of the diode:



*Great Value Deco LED Dimmable Soft White G25 Light Bulb 60W Equivalent*



*Great Value LED Light Bulb 5.5W 60W Equivalent B10 Deco Lamp*



*Great Value LED Light Bulb 9.5W 60W Equivalent A19 Motion Sensor Lamp*



*Hyper Tough 2000 Lumen LED Solar Motion Sensor Security Flood Light*

74. ***1(c): An active region formed upon the substrate; and***;— the light emitting diode chip in each of the Great Value Deco LED Dimmable Soft White G25 Light Bulb 60W Equivalent, Great Value LED Light Bulb 5.5W 60W Equivalent B10 Deco Lamp, Great Value LED Light Bulb 9.5W 60W Equivalent A19 Motion Sensor Lamp, and Hyper Tough 2000 Lumen LED Solar

Motion Sensor Security Flood Light has an active region formed upon the substrate as annotated in the images below:



*Great Value Deco LED Dimmable Soft White G25 Light Bulb 60W Equivalent*



*Great Value LED Light Bulb 5.5W 60W Equivalent B10 Deco Lamp*



*Great Value LED Light Bulb 9.5W 60W Equivalent A19 Motion Sensor Lamp*



*Hyper Tough 2000 Lumen LED Solar Motion Sensor Security Flood Light*

75.      ***1(d): Wherein an aspect ratio of the active area is greater than approximately 1.5 to 1.*** — the aspect ratio of the active area of the light emitting diode chip in each of the Great Value Deco LED Dimmable Soft White G25 Light Bulb 60W Equivalent, Great Value LED Light Bulb 5.5W 60W Equivalent B10 Deco Lamp, Great Value LED Light Bulb 9.5W 60W Equivalent A19 Motion Sensor Lamp, and Hyper Tough 2000 Lumen LED Solar Motion Sensor Security Flood Light is greater than 1.5 to 1. Below are these products' diode chips with their dimensions labeled:



*Great Value Deco LED Dimmable Soft White G25 Light Bulb 60W Equivalent*



*Great Value LED Light Bulb 5.5W 60W Equivalent B10 Deco Lamp*



*Great Value LED Light Bulb 9.5W 60W Equivalent A19 Motion Sensor Lamp*



*Hyper Tough 2000 Lumen LED Solar Motion Sensor Security Flood Light*

76.     The aspect ratios of the active areas of the light emitting diode chip in the Great
Value Deco LED Dimmable Soft White G25 Light Bulb 60W Equivalent, Great Value LED Light
Bulb 5.5W 60W Equivalent B10 Deco Lamp, Great Value LED Light Bulb 9.5W 60W Equivalent
A19 Motion Sensor Lamp, and Hyper Tough 2000 Lumen LED Solar Motion Sensor Security
Flood Light are all greater than 1.5 to 1. Specifically, the aspect ratios, as derived from the pixel
(px) measurements taken from the above images, are:

|  | L1 (long side) | L2 | Aspect Ratio (L1/L2) |
|---|---|---|---|
| Great Value Deco LED Dimmable Soft White G25 Light Bulb 60W Equivalent | 1625.49 | 660.17 | 2.462 |
| Great Value LED Light Bulb 5.5W 60W Equivalent B10 Deco Lamp | 1110.41 | 340.33 | 3.263 |
| Great Value LED Light Bulb 9.5W 60W Equivalent A19 Motion Sensor Lamp | 1040.19 | 332.39 | 3.129 |
| Hyper Tough 2000 Lumen LED Solar Motion Sensor Security Flood Light | 2700.91 | 1040.59 | 2.596 |

77.     Additionally, Defendant has been and/or currently is an active inducer of
infringement of the '812 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '812
Patent under 35 U.S.C. § 271(c).

78.     Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or
encouraging customers to directly infringe one or more claims of the '812 Patent while being on
notice of (or willfully blind to) the '812 Patent. For instance, Defendant has supplied and continue
to supply the '812 Accused Products to customers (*e.g.*, end users and/or distributors of the '812
Accused Products) while knowing that use of these products in their intended manner will directly
infringe one or more claims of the '812 Patent.

79.     Defendant has been and/or currently is knowingly and intentionally encouraging

and aiding customers to engage in such direct infringement of the '812 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '812 Accused Products and uses of the '812 Accused Products.[1]

80.     Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '812 Patent. For instance, Defendant knows (and/or has known) of the existence of the '812 Patent or at least should have known of the existence of the '812 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '812 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of its knowledge of the '812 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '812 Patent by Defendant's customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '812 Patent and/or subjectively believes (and/or has believed) that its actions will (and/or would) result in infringement of the '812 Patent but has taken (and/or took) deliberate actions to avoid learning of those facts.

81.     Additionally, Defendant has been and/or currently is contributorily infringing one

---

[1] See, e.g., https://www.walmart.com/ip/Great-Value-Deco-LED-Dimmable-Soft-White-G25-Light-Bulbs-60w-Eqv-3-Pack/451701854, https://www.walmart.com/ip/Great-Value-LED-Light-Bulb-10-Watts-90W-Equivalent-PAR38-Floodlight-Lamp-E26-Medium-Base-Non-dimmable-Daylight-2-Pack/144556146, https://www.walmart.com/ip/Great-Value-LED-Light-Bulb-5-5W-60W-Equivalent-B10-Deco-Lamp-E12-Candelabra-Base-Dimmable-Soft-White-4-Pack/291017558, https://www.walmart.com/ip/Great-Value-LED-Light-Bulb-6W-60W-Equivalent-A15-Lamp-E26-Medium-Base-Dimmable-Soft-White/51496393, https://www.walmart.com/ip/Great-Value-LED-Light-Bulb-9-5W-60W-Equivalent-A19-Motion-Sensor-Lamp-E26-Medium-Base-Non-dimmable-Soft-White-1-Pack/419284710, https://www.walmart.com/ip/Great-Value-Vintage-Light-Bulb-60W-Equivalent-Amber-Light-G25-E26-3-Pack/287380246, https://www.walmart.com/ip/Great-Value-Vintage-Light-Bulb-Amber-Light-E26-40W-Equivalent-ST19-4-Pack/696962973, https://www.walmart.com/ip/Great-Value-Wiz-LED-Smart-Bulb-A19-60-Watt-2700K-6500K-Wi-fi-Dimmable-NEW/118622012, https://www.walmart.com/ip/Hyper-Tough-1000-Lumen-LED-Motion-Activated-Solar-Path-Light-Wall-Mounting/524070210, https://www.walmart.com/ip/Hyper-Tough-2000-Lumen-LED-Solar-Motion-Sensor-Security-Flood-Light/349878111.

or more claims of the '812 Patent by offering for sale, selling, and/or importing one or more components in connection with the '812 Accused Products that contribute to the direct infringement of the '812 Patent by customers of the '812 Accused Products. As set forth above, Defendant has had actual knowledge of the '812 Patent or are willfully blind to its existence since at least as early as the filing and/or service of this Complaint. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the '812 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '812 Patent. Defendant has supplied (and/or continues to supply) the '812 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '812 Patent by using the '812 Accused Products in their intended manner (*e.g.*, pursuant to instructions provided by Defendant).

82.     At least as early as the filing and/or service of this Complaint, Defendant's infringement of the '812 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

83.     Additional allegations regarding Defendant's knowledge of the '812 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

84.     Defendant's infringement of the '812 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

85.     Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '812 Patent.

86.     Plaintiff is entitled to recover from Defendant all damages that Plaintiff has

sustained as a result of Defendant's infringement of the '812 Patent, including, without limitation, a reasonable royalty.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,901,109

87.     Plaintiff incorporates by reference and re-alleges the allegations set forth above as if set forth verbatim herein.

88.     Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '109 Patent in violation of 35 U.S.C. § 271 *et seq.*, directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the Hyper Tough 2000 Lumen LED Solar Motion Sensor Security Flood Light, among other substantially similar products (collectively, the "'109 Accused Products").

89.     By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '109 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '109 Accused Products that it obtains during discovery.

90.     ***10(a). A solid state light assembly, comprising a solid state light; and***—the Hyper Tough 2000 Lumen LED Solar Motion Sensor Security Flood Light is a solid state light assembly comprising a solid state light as shown below:



91.    **10(b): a heat sink integrally affixed to the solid state light, the heat sink comprising at least one fin for dissipating heat generated by the solid state light.**— the Hyper Tough 2000 Lumen LED Solar Motion Sensor Security Flood Light comprises a heat sink integrally affixed to the solid state light, the heat sink comprising at least one fin for dissipating heat generated by the solid state light, as shown below:




92.     Additionally, Defendant has been and/or currently is an active inducer of infringement of the '109 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '109 Patent under 35 U.S.C. § 271(c).

93.     Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '109 Patent while being on notice of (or willfully blind to) the '109 Patent. For instance, Defendant has supplied and continue to supply the '109 Accused Products to customers (*e.g.*, end users and/or distributors of the '109 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '109 Patent.

94.     Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '109 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '109 Accused   Products   and   uses   of   the   '109   Accused   Products.   *See*,   *e.g.*, https://www.walmart.com/ip/Hyper-Tough-2000-Lumen-LED-Solar-Motion-Sensor-Security-Flood-Light/349878111.

95.     Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '109 Patent. For instance, Defendant knows (and/or has known) of the existence of the '109 Patent or at least should have known of the existence of the '109 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '109 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of their knowledge of the '109 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the

'109 Patent by Defendant's customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '109 Patent and/or subjectively believes (and/or has believed) that its actions will (and/or would) result in infringement of the '109 Patent but has taken (and/or took) deliberate actions to avoid learning of those facts.

96.     Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the '109 Patent by offering for sale, selling, and/or importing one or more components in connection with the '109 Accused Products that contribute to the direct infringement of the '109 Patent by customers of the '109 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the '109 Patent or are willfully blind to its existence since at least as early as the filing and/or service of this Complaint. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the '109 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '109 Patent. Defendant has supplied (and/or continues to supply) the '109 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '109 Patent by using the '109 Accused Products in their intended manner (*e.g.*, pursuant to instructions provided by Defendant).

97.     At least as early as the filing and/or service of this Complaint, Defendant's infringement of the '109 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

98.     Additional allegations regarding Defendant's knowledge of the '109 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for

discovery.

99.     Defendant's infringement of the '109 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

100.     Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '109 Patent.

101.     Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '109 Patent, including, without limitation, a reasonable royalty.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,973,465

102.     Plaintiff incorporates by reference and re-alleges the allegations set forth above as if set forth verbatim herein.

103.     Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '465 Patent in violation of 35 U.S.C. § 271 *et seq.*, directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, products, including but not limited to the Great Value LED 3.5 Watts Soft White MR16 GU10 Base Bulb and Hyper Tough 1000 Lumen LED Motion Activated Solar Path Light, among other substantially similar products (collectively, the "'465 Accused Products").

104.     As non-limiting examples, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '465 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '465 Accused Products that it obtains during discovery.

105.    ***1(a): An apparatus comprising: A light emitting device***;—the Great Value LED 3.5 Watts Soft White MR16 GU10 Base Bulb and Hyper Tough 1000 Lumen LED Motion Activated Solar Path Light each comprise a light emitting device as shown:

 

*Great Value LED 3.5 Watts Soft White MR16 GU10 Base Bulb*

 

*Hyper Tough 1000 Lumen LED Motion Activated Solar Path Light*

106.    *1(b): a phosphor bearing film arranged with the light emitting device, the phosphor bearing film comprising phosphor and a silicone carrier; and*—The Great Value LED 3.5 Watts Soft White MR16 GU10 Base Bulb and Hyper Tough 1000 Lumen LED Motion Activated Solar Path Light each comprise a phosphor-bearing film, comprising of phosphor and a silicone carrier, arranged with the light emitting device, as shown:






*Great Value LED 3.5 Watts Soft White MR16 GU10 Base Bulb*







*Hyper Tough 1000 Lumen LED Motion Activated Solar Path Light*

107.    *1(c): a cured silicone film on the phosphor bearing film, the cured silicone film being substantially free of phosphor.*— the Great Value LED 3.5 Watts Soft White MR16 GU10 Base Bulb and Hyper Tough 1000 Lumen LED Motion Activated Solar Path Light each comprise a cured silicone film (*e.g.* a hardened silicone film) on the phosphor-bearing film, the cured silicone film being substantially free of phosphor as shown below:





*Great Value LED 3.5 Watts Soft White MR16 GU10 Base Bulb*





*Hyper Tough 1000 Lumen LED Motion Activated Solar Path Light*

108.    Additionally, Defendant has been and/or currently is an active inducer of infringement of the '465 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '465 Patent under 35 U.S.C. § 271(c).

109.    Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '465 Patent while being on notice of (or willfully blind to) the '465 Patent. For instance, Defendant has supplied and continue to supply the '465 Accused Products to customers (*e.g.*, end users and/or distributors of the '465 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '465 Patent.

110.    Defendant has been and/or currently is knowingly and intentionally encouraging

and aiding customers to engage in such direct infringement of the '465 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '465 Accused Products and uses of the '465 Accused Products. *See*, *e.g.*, https://www.walmart.com/ip/Great-Value-LED-3-5-Watts-Soft-White-MR16-GU10-Base-Bulbs-2-Count/55465507, https://www.walmart.com/ip/Hyper-Tough-1000-Lumen-LED-Motion-Activated-Solar-Path-Light-Wall-Mounting/524070210.

111.    Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '465 Patent. For instance, Defendant knows (and/or has known) of the existence of the '465 Patent or at least should have known of the existence of the '465 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '465 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of their knowledge of the '465 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '465 Patent by Defendant's customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '465 Patent and/or subjectively believes (and/or has believed) that its actions will (and/or would) result in infringement of the '465 Patent but has taken (and/or took) deliberate actions to avoid learning of those facts.

112.    Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the '465 Patent by offering for sale, selling, and/or importing one or more components in connection with the '465 Accused Products that contribute to the direct infringement of the '465 Patent by customers of the '465 Accused Products. In particular, as set

forth above, Defendant has had actual knowledge of the '465 Patent or are willfully blind to its existence since at least as early as the filing and/or service of this Complaint. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the '465 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '465 Patent. Defendant has supplied (and/or continues to supply) the '465 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '465 Patent by using the '465 Accused Products in their intended manner (*e.g.*, pursuant to instructions provided by Defendant).

113.    At least as early as the filing and/or service of this Complaint, Defendant's infringement of the '465 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

114.    Additional allegations regarding Defendant's knowledge of the '465 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

115.    Defendant's infringement of the '465 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

116.    Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '465 Patent.

117.    Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '465 Patent, including, without limitation, a reasonable royalty.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 8,203,260

118.    Plaintiff incorporates by reference and re-alleges the allegations set forth above as if set forth verbatim herein.

119.    Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '260 Patent in violation of 35 U.S.C. § 271 *et seq.*, directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, products, including but not limited to the Great Value Wiz LED Smart Bulb A19 60 Watt 2700K 6500K Wifi Dimmable, among other substantially similar products (collectively, the "'260 Accused Products").

120.    As non-limiting examples, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '260 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '260 Accused Products that it obtains during discovery.

121.    *1(a): A color temperature tunable white light source, the source comprising:*—the Great Value Wiz LED Smart Bulb A19 60 Watt 2700K 6500K Wifi Dimmable is a color temperature tunable white light source.

122.    *1(b): an array of first LED arrangements operable to emit white light with a color correlated temperature (CCT) in a range of 2500 K to 4000 K and;*—the Great Value Wiz LED Smart Bulb A19 60 Watt 2700K 6500K Wifi Dimmable comprises an array of first LED arrangements operable to emit white light with a CCT between 2500 K to 4000K.




123.    *1(c): second LED arrangements operable to emit white light with a color correlated temperature (CCT) in a range of 6000 K to 10,000 K;* - the Great Value Wiz LED Smart Bulb A19 60 Watt 2700K 6500K Wifi Dimmable contains an array of second LED arrangements operable to emit white light with a CCT in a range of 6000K to 10000K (*e.g.*, 6500k).




124.    **1(d): wherein the LED arrangements are configured such that a composite light is emitted by the array;**—the Great Value Wiz LED Smart Bulb A19 60 Watt 2700K 6500K Wifi Dimmable's LED arrangements are configured to emit a composite light. For example, the LEDs are tunable and placed next to each other so that the Warm White LED arrangement and the Cool White LED arrangement emit a composite light (*e.g.* a uniform white color temperature).

125.    **1(e): wherein the relative drive currents of the first and second LED arrangements are controllable, and thus variable in relative magnitude, such that the color correlated temperature of the composite light emitted by the array is electrically tunable**—the Great Value Wiz LED Smart Bulb A19 60 Watt 2700K 6500K Wifi Dimmable's relative drive currents of its first and second LED arrangements are controllable and vary in magnitude. The CCT of the composite light emitted by the array is electrically tunable. For example, the brightness of the arrangements is adjustable and vary based on the drive current of the circuit and the CCT is electrically tunable. To illustrate this, the following images show the measurement of brightness (the measurement tool is a luxmeter) of the array as the intensity is increased:




 

126.     Additionally, Defendant has been and/or currently is an active inducer of infringement of the '260 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '260 Patent under 35 U.S.C. § 271(c).

127.     Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '260 Patent while being on notice of (or willfully blind to) the '260 Patent. For instance, Defendant has supplied and continue to supply the '260 Accused Products to customers (*e.g.*, end users and/or distributors of the '260 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '260 Patent.

128.     Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '260 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '260

Accused   Products   and   uses   of   the   '260   Accused   Products.  *See*, *e.g.*, https://www.walmart.com/ip/Great-Value-Wiz-LED-Smart-Bulb-A19-60-Watt-2700K-6500K-Wi-fi-Dimmable-NEW/118622012.

129.   Defendant   knows   (and/or   has   known)   that   such   encouraging   and   aiding   does (and/or would) result in their customers directly infringing the '260 Patent. For instance, Defendant knows (and/or has known) of the existence of the '260 Patent or at least should have known of the existence of the '260 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '260 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of their knowledge of the '260 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '260 Patent by Defendant's customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '260 Patent and/or subjectively believes (and/or has believed) that its actions will (and/or would) result in infringement of the '260 Patent but has taken (and/or took) deliberate actions to avoid learning of those facts.

130.   Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the '260 Patent by offering for sale, selling, and/or importing one or more components   in   connection   with   the   '260   Accused   Products   that   contribute   to   the   direct infringement of the '260 Patent by customers of the '260 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the '260 Patent or are willfully blind to its existence since at least as early as the filing and/or service of this Complaint. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the '260 Accused

Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '260 Patent. Defendant has supplied (and/or continues to supply) the '260 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '260 Patent by using the '260 Accused Products in their intended manner (*e.g.*, pursuant to instructions provided by Defendant).

131.   At least as early as the filing and/or service of this Complaint, Defendant's infringement of the '260 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

132.   Additional allegations regarding Defendant's knowledge of the '260 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

133.   Defendant's infringement of the '260 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

134.   Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '260 Patent.

135.   Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '260 Patent, including, without limitation, a reasonable royalty.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 8,567,988

136.   Plaintiff incorporates by reference and re-alleges the allegations set forth above as if set forth verbatim herein.

137.   Defendant has infringed and are infringing, either literally or under the doctrine of

equivalents, the '988 Patent in violation of 35 U.S.C. § 271 *et seq.*, directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, products, including but not limited to the Great Value LED Frosted Light Bulb A19 40 60 100 Watts Day Light 3 Way Bulb, Great Value LED 3.5 Watts Soft White MR16 GU10 Base Bulb, Great Value LED Light Bulb 10 Watts 90W Equivalent PAR38 Floodlight Lamp, Great Value LED Light Bulb 6W 60W Equivalent A15 Lamp, among other substantially similar products (collectively, the "'988 Accused Products").

138.    As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claims 1 and 7 of the '988 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '988 Accused Products that it obtains during discovery.

139.    ***1(a): A light emitting diode (LED) apparatus comprising:***— the Great Value LED 3.5 Watts Soft White MR16 GU10 Base Bulb, Great Value LED Light Bulb 10 Watts 90W Equivalent PAR38 Floodlight Lamp, Great Value LED Light Bulb 6W 60W Equivalent A15 Lamp each comprises an LED apparatus:



*Great Value LED 3.5 Watts Soft White MR16 GU10 Base Bulb*



*Great Value LED Light Bulb 10 Watts 90W Equivalent PAR38 Floodlight Lamp*



*Great Value LED Light Bulb 6W 60W Equivalent A15 Lamp*

140.   ***1(b): a metal substrate having a reflective surface; and:***— the LED apparatus of

each of the Great Value LED 3.5 Watts Soft White MR16 GU10 Base Bulb, Great Value LED

Light Bulb 10 Watts 90W Equivalent PAR38 Floodlight Lamp, Great Value LED Light Bulb 6W

60W Equivalent A15 Lamp comprise a reflective metal substrate as shown below:

 

*Great Value LED 3.5 Watts Soft White MR16 GU10 Base Bulb*

 

*Great Value LED Light Bulb 10 Watts 90W Equivalent PAR38 Floodlight Lamp*

 

*Great Value LED Light Bulb 6W 60W Equivalent A15 Lamp*

141.   ***1(c): a plurality of LED chips mounted directly to the reflective surface of the***
***metal substrate creating an efficient thermal path and;—*** the Great Value LED 3.5 Watts Soft
White MR16 GU10 Base Bulb, Great Value LED Light Bulb 10 Watts 90W Equivalent PAR38
Floodlight Lamp, Great Value LED Light Bulb 6W 60W Equivalent A15 Lamp each comprises a
plurality of LED chips mounted directly to the reflective surface of the metal substrate, which
creates an efficient thermal path as shown below:





*Great Value LED 3.5 Watts Soft White MR16 GU10 Base Bulb*





*Great Value LED Light Bulb 10 Watts 90W Equivalent PAR38 Floodlight Lamp*





*Great Value LED Light Bulb 6W 60W Equivalent A15 Lamp*

142.    ***1(d): at least a portion of the LED chips being spaced apart from each other to expose regions of the reflective surface between the portion of the LED chips, the exposed regions reflecting light emitted from the portion of the LED chips, and***—the Great Value LED 3.5 Watts Soft White MR16 GU10 Base Bulb, Great Value LED Light Bulb 10 Watts 90W Equivalent PAR38 Floodlight Lamp, Great Value LED Light Bulb 6W 60W Equivalent A15 Lamp each comprises a plurality of LED chips spaced apart from each other to expose regions of the reflective surface between the LED chips where the light emitted from the LED chips is reflected from the exposed reflective surface – as shown below:




*Great Value LED 3.5 Watts Soft White MR16 GU10 Base Bulb*





*Great Value LED Light Bulb 10 Watts 90W Equivalent PAR38 Floodlight Lamp*



*Great Value LED Light Bulb 6W 60W Equivalent A15 Lamp*

143. ***1(e): an electrical path formed by connecting the LED chips in a chip to chip fashion***— the LED apparatuses of the Great Value LED 3.5 Watts Soft White MR16 GU10 Base Bulb, Great Value LED Light Bulb 10 Watts 90W Equivalent PAR38 Floodlight Lamp, Great Value LED Light Bulb 6W 60W Equivalent A15 Lamp each comprise electrical paths formed by their LED chips connected in a chip-to-chip fashion as shown below:



*Great Value LED 3.5 Watts Soft White MR16 GU10 Base Bulb*





*Great Value LED Light Bulb 10 Watts 90W Equivalent PAR38 Floodlight Lamp*



*Great Value LED Light Bulb 6W 60W Equivalent A15 Lamp*

144.     ***Claim 7: The apparatus of claim 1 wherein the plurality of LED chips have a first surface that is mounted to the reflective surface, and electrical contacts that are provided on one or more surfaces that are not the first surface***.-The LED chips of the Great Value LED 3.5 Watts Soft White MR16 GU10 Base Bulb, Great Value LED Light Bulb 10 Watts 90W Equivalent PAR38 Floodlight Lamp, and Great Value LED Light Bulb 6W 60W Equivalent A15 Lamp have electrical contacts which are provided on surfaces other than the one mounted to the reflective surface, as seen in the below images:



*Great Value LED 3.5 Watts Soft White MR16 GU10 Base Bulb*

53



*Great Value LED Light Bulb 10 Watts 90W Equivalent PAR38 Floodlight Lamp*



*Great Value LED Light Bulb 6W 60W Equivalent A15 Lamp*

145.   Additionally, Defendant has been and/or currently is an active inducer of infringement of the '988 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '988 Patent under 35 U.S.C. § 271(c).

146.   Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '988 Patent while being on notice of (or willfully blind to) the '988 Patent. For instance, Defendant has supplied and continue to supply the '988 Accused Products to customers (*e.g.*, end users and/or distributors of the '988 Accused Products) while knowing that use of these products in their intended manner will directly

infringe one or more claims of the '988 Patent.

147.    Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '988 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '988 Accused Products and uses of the '988 Accused Products.[2]

148.    Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '988 Patent. For instance, Defendant knows (and/or has known) of the existence of the '988 Patent or at least should have known of the existence of the '988 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '988 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of their knowledge of the '988 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '988 Patent by Defendant's customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '988 Patent and/or subjectively believes (and/or has believed) that its actions will (and/or would) result in infringement of the '988 Patent but has taken (and/or took) deliberate actions to avoid learning of those facts.

149.    Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the '988 Patent by offering for sale, selling, and/or importing one or more

---

[2] See, e.g., https://www.walmart.com/ip/Great-Value-LED-3-5-Watts-Soft-White-MR16-GU10-Base-Bulbs-2-Count/55465507, https://www.walmart.com/ip/Great-Value-LED-Frosted-Light-Bulb-A19-40-60-100-Watts-Day-Light-3-Way-Bulb-Medium-Base-Dimmable-1-Pack/150415764, https://www.walmart.com/ip/Great-Value-LED-Light-Bulb-10-Watts-90W-Equivalent-PAR38-Floodlight-Lamp-E26-Medium-Base-Non-dimmable-Daylight-2-Pack/144556146, https://www.walmart.com/ip/Great-Value-LED-Light-Bulb-6W-60W-Equivalent-A15-Lamp-E26-Medium-Base-Dimmable-Soft-White/51496393.

components in connection with the '988 Accused Products that contribute to the direct infringement of the '988 Patent by customers of the '988 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the '988 Patent or are willfully blind to its existence since at least as early as the filing and/or service of this Complaint. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the '988 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '988 Patent. Defendant has supplied (and/or continues to supply) the '988 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '988 Patent by using the '988 Accused Products in their intended manner (*e.g.*, pursuant to instructions provided by Defendant).

150.     At least as early as the filing and/or service of this Complaint, Defendant's infringement of the '988 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

151.     Additional allegations regarding Defendant's knowledge of the '988 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

152.     Defendant's infringement of the '988 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

153.     Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '988 Patent.

154.     Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '988 Patent, including, without limitation,

a reasonable royalty.

## COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 8,998,433

155. Plaintiff incorporates by reference and re-alleges the allegations set forth above as if set forth verbatim herein.

156. Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '433 Patent in violation of 35 U.S.C. § 271 *et seq.*, directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, products, including but not limited to the Great Value Vintage Light Bulb 60W Equivalent Amber Light G25 E26, Great Value Vintage Light Bulb Amber Light E26 40W Equivalent ST19, among other substantially similar products (collectively, the "'433 Accused Products").

157. As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claims 1 of the '433 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '433 Accused Products that it obtains during discovery.

158. ***1(a): A light emitting device configured to emit light of a selected color having a selected peak wavelength, comprising***:—the Great Value Vintage Light Bulb 60W Equivalent Amber Light G25 E26, Great Value Vintage Light Bulb Amber Light E26 40W Equivalent ST19 comprises a light emitting device configured to emit light of a selected color having a selected peak wavelength, as shown below:



*Great Value Vintage Light Bulb 60W Equivalent Amber Light G25 E26*



*Measurement of the emitted light's wavelength*



*Great Value Vintage Light Bulb Amber Light E26 40W Equivalent ST19*



*Measurement of the emitted light's wavelength*

159.    ***1(b): a radiation source operable to generate and radiate excitation energy, the source being configured to irradiate a wavelength conversion component with excitation energy;***— the Great Value Vintage Light Bulb 60W Equivalent Amber Light G25 E26, Great Value Vintage Light Bulb Amber Light E26 40W Equivalent ST19 comprises a radiation source (*e.g.* LEDs) operable to generate and radiate excitation energy (*e.g.* Light), the source being configured to irradiate a wavelength conversion component (*e.g.* Phosphor) with a excitation energy. For example, the filament bulb comprises LEDs in the form of filaments to generate light and irradiate the phosphor covering said LEDs as shown below:




*Image of the bulb*

*LED filaments*

*Great Value Vintage Light Bulb 60W Equivalent Amber Light G25 E26*




*Image of the bulb*

*LED filaments*

*Great Value Vintage Light Bulb Amber Light E26 40W Equivalent ST19*

160.  ***1(c): the wavelength conversion component comprising: a layer comprising a photo-luminescent material which, when irradiated by the radiation source, emits light of a first***

*wavelength range having a single peak wavelength corresponding to the selected peak wavelength;*—The wavelength conversion component(s) each comprise a layer of photo luminescent material (*e.g.* Phosphor material), which emits a light of a first wavelength range upon irradiation having a single peak wavelength corresponding to the selected peak wavelength – as shown below. The following measurements correspond to measurements of the light emitted from the LED filaments *without* the amber glass filter.



*Great Value Vintage Light Bulb 60W Equivalent Amber Light G25 E26*
*Selected peak wavelength is approximately 625nm*



*Great Value Vintage Light Bulb Amber Light E26 40W Equivalent ST19*
*Selected peak wavelength is approximately 635nm*

161.    **1(d): a color enhancement filter layer to filter wavelengths of light outside of a second range, wherein the second wavelength range in narrower than the first wavelength range and centered on the selected peak wavelength**— the Great Value Vintage Light Bulb 60W Equivalent Amber Light G25 E26, Great Value Vintage Light Bulb Amber Light E26 40W Equivalent ST19 comprises a color enhancement filter layer to filter wavelengths outside of a second range. The second wavelength range is narrower than the first wavelength range and centered on the selected peak wavelength. The color enhancement filter layer (*e.g.* amber glass) filters wavelength outside the second range (*e.g.* filter wavelengths of 400nm-610nm and 660nm-740nm). The comparisons of emission spectra with versus without the color enhancement filter layer are shown below for each product:

*Without color enhancement filter layer*



*With color enhancement filter layer*



*Great Value Vintage Light Bulb 60W Equivalent Amber Light G25 E26*

*Without color enhancement filter layer*



*With color enhancement filter layer*



*Great Value Vintage Light Bulb Amber Light E26 40W Equivalent ST19*

162.    Additionally, Defendant has been and/or currently is an active inducer of infringement of the '433 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '433 Patent under 35 U.S.C. § 271(c).

163.    Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '433 Patent while being on notice of (or willfully blind to) the '433 Patent. For instance, Defendant has supplied and continue to supply the '433 Accused Products to customers (*e.g.*, end users and/or distributors of the '433 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '433 Patent.

164.    Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '433 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '433 Accused Products and uses of the '433 Accused Products. *See*, *e.g.*, https://www.walmart.com/ip/Great-Value-Vintage-Light-Bulb-60W-Equivalent-Amber-Light-G25-E26-3-Pack/287380246, https://www.walmart.com/ip/Great-Value-Vintage-Light-Bulb-Amber-Light-E26-40W-Equivalent-ST19-4-Pack/696962973.

165.    Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '433 Patent. For instance, Defendant knows (and/or has known) of the existence of the '433 Patent or at least should have known of the existence of the '433 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '433 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of their knowledge of the '433 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has

intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '433 Patent by Defendant's customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '433 Patent and/or subjectively believes (and/or has believed) that its actions will (and/or would) result in infringement of the '433 Patent but has taken (and/or took) deliberate actions to avoid learning of those facts.

166.    Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the '433 Patent by offering for sale, selling, and/or importing one or more components in connection with the '433 Accused Products that contribute to the direct infringement of the '433 Patent by customers of the '433 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the '433 Patent or are willfully blind to its existence since at least as early as the filing and/or service of this Complaint. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the '433 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '433 Patent. Defendant has supplied (and/or continues to supply) the '433 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '433 Patent by using the '433 Accused Products in their intended manner (*e.g.*, pursuant to instructions provided by Defendant).

167.    At least as early as the filing and/or service of this Complaint, Defendant's infringement of the '433 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

168.    Additional allegations regarding Defendant's knowledge of the '433 Patent and

willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

169.    Defendant's infringement of the '433 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

170.    Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '433 Patent.

171.    Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '433 Patent, including, without limitation, a reasonable royalty.

### COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 10,966,300

172.    Plaintiff incorporates by reference and re-alleges the allegations set forth above as if set forth verbatim herein.

173.    Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '300 Patent in violation of 35 U.S.C. § 271 *et seq.*, directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, products, including but not limited to the Great Value 9 Watts (65W Equivalent) BR30 Floodlight Lamp, Great Value 7W (50W Equivalent) PAR16 Lamp, and Great Value LED MR16 Flood Light,  among other substantially similar products (collectively, the "'300 Accused Products").

174.    As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '300 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '300 Accused Products that it obtains

during discovery.

175.     *1(a): A light source comprising:*—The Great Value 9 Watts (65W Equivalent) BR30 Floodlight Lamp comprises a light source.

176.     *1(b): a substrate having first and second power rails; and*—The Great Value 9 Watts (65W Equivalent) BR30 Floodlight Lamp comprises a substrate having first and second power rails, as seen in the annotated images below:



177.     *1(c): a plurality of segmented LEDs connected between the first and second power rails*—The Great Value 9 Watts (65W Equivalent) BR30 Floodlight Lamp comprises a plurality of segmented LEDs connected between the first and second power rails as seen in the annotated images below:





178.   ***1(d): wherein each segmented LED is configured to generate light when a power signal is applied to the first and second power rails***—In the Great Value 9 Watts (65W Equivalent) BR30 Floodlight Lamp, each segmented LED is configured to generate light when a power signal is applied to the first and second power rails.

179.   ***1(e): wherein the plurality of segmented LEDs are provided by a single LED die that is divided into N segments serially connected to each other, with N being ≥1, and***—The plurality of segmented LEDs are provided by a single LED die that is divided into 3 segments serially connected to each other.





180.    *1(f): wherein each segmented LED comprises a size that is 1/N times a size of a single junction LED fabricated in a same material as the segmented LED.*—Each segmented LED is 1/3 the size of a single junction LED fabricated in the same material as the segmented LED.

181.    Additionally, Defendant has been and/or currently is an active inducer of infringement of the '300 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '300 Patent under 35 U.S.C. § 271(c).

182.    Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '300 Patent while being on notice of (or willfully blind to) the '300 Patent. For instance, Defendant has supplied and continues to supply the '300 Accused Products to customers (e.g., end users and/or distributors of the '300 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '300 Patent.

183.    Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '300 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '300 Accused Products and uses of the '300 Accused Products.[3]

184.    Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '300 Patent. For instance, Defendant knows (and/or has known) of the existence of the '300 Patent or at least should have known of the existence of the '300 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '300 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of their knowledge of the '300 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '300 Patent by Defendant's customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '300 Patent and/or subjectively believes (and/or has believed) that its actions will (and/or would) result in infringement of the '300 Patent but has taken (and/or took) deliberate actions to avoid learning of those facts.

185.    Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the '300 Patent by offering for sale, selling, and/or importing one or more components in connection with the '300 Accused Products that contribute to the direct

---

[3] See, e.g., https://www.walmart.com/ip/Great-Value-LED-Light-Bulb-9-Watts-65W-Equivalent-BR30-Floodlight-Lamp-E26-Medium-Base-Non-dimmable-Daylight-4-Pack/55465438; https://www.walmart.com/ip/Great-Value-LED-Light-Bulb-7W-50W-Equivalent-PAR16-Lamp-E26-Medium-Base-Dimmable-Soft-White-3-Pack/515130585; https://www.walmart.com/ip/Great-Value-LED-MR16-Flood-Light-Soft-White-20w-Eqv-Gu10-Base-Ca/388982524.

infringement of the '300 Patent by customers of the '300 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the '300 Patent or are willfully blind to its existence since at least as early as the filing and/or service of this Complaint. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the '300 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '300 Patent. Defendant has supplied (and/or continues to supply) the '300 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '300 Patent by using the '300 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

186.     At least as early as the filing and/or service of this Complaint, Defendant's infringement of the '300 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

187.     Additional allegations regarding Defendant's knowledge of the '300 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

188.     Defendant's infringement of the '300 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

189.     Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '300 Patent.

190.     Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '300 Patent, including, without limitation, a reasonable royalty.

## JURY DEMAND

191.    Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests:

A.  That Judgment be entered that Defendant has infringed at least one or more claims of the Patents-in-Suit, directly and/or indirectly, literally and/or under the doctrine of equivalents;

B.  An award of damages sufficient to compensate Plaintiff for Defendant's infringement under 35 U.S.C. § 284, including an enhancement of damages on account of Defendant's willful infringement;

C.  That the case be found exceptional under 35 U.S.C. § 285 and that Plaintiff be awarded its reasonable attorneys' fees;

D.  Costs and expenses in this action;

E.  An award of prejudgment and post-judgment interest; and

F.  Such other and further relief as the Court may deem just and proper.

Dated: May 2, 2022                          Respectfully submitted,

                                            **PLATT CHEEMA RICHMOND PLLC**

                                            */s/ Matthew C. Acosta*
                                            Matthew C. Acosta
                                            Texas Bar No. 24062577
                                            macosta@pcrfirm.com
                                            Andrew Lin
                                            Texas Bar. No. 24092702
                                            alin@pcrfirm.com
                                            Nicholas C. Kliewer
                                            Texas Bar No. 24083315
                                            nkliewer@pcrfirm.com
                                            **PLATT CHEEMA RICHMOND PLLC**
                                            1201 N. Riverfront Blvd., Suite 150
                                            Dallas, Texas 75207
                                            214.559.2700 Main
                                            214.559.4390 Fax

                                            **COUNSEL FOR PLAINTIFF**
                                            **BX LED, LLC**